UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDWARD LOUIS ESPOSITO,

        Plaintiff,

        v.                                  Case No. 19-C-1875

JULIE TOWERY, et al.,

        Defendants.

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

        Plaintiff Edward Esposito, representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that a correctional officer and nurse violated his civil rights by their deliberate indifference to his medical needs while he was in custody as a pretrial detainee at the Racine County Jail (RCJ). The matter comes before the court on separate motions by Defendants for summary judgment. Dkt. Nos. 43, 49. For the following reasons, Defendants' motions will be granted, and the case will be dismissed.

**BACKGROUND**

        At all times relevant to this matter, Esposito was in detention at RCJ. On November 29, 2019, Esposito put in a request for medical attention due to swelling in his foot over the previous two days. On the morning of December 1, 2019, Officer Mann came on shift and was informed by the third-shift officer that Esposito had submitted prior medical complaints about a spider bite on his foot but had not yet been seen by medical personnel. At approximately 8:00 a.m., Officer Mann instructed Esposito to fill out another request in case it was needed. Officer Mann called down to the Health Services Unit (HSU) to find out when Esposito could be seen and was told the

medical staff would be coming up shortly. Esposito was apparently unaware of this call. At approximately 8:20 a.m., medical staff came to see Esposito. Officer Mann asked if medical staff needed the request form and was told that they did not and he could throw it away, which he did without giving Esposito a copy of it. As the body-cam recording shows, Officer Mann explained to Esposito that, because HSU had arrived and was seeing him, there was no need to submit another request and thereby confuse HSU as to whether he needed to be seen again. Esposito wanted the copy apparently so he could document his case.

Nurse Towery examined Esposito and found that his third left toe was swollen, inflamed, and appeared infected. She then consulted with the doctor, who prescribed Bactrim antibiotic, application of warm compresses, and elevation of the foot. Although it was not until the doctor changed his antibiotic prescription on December 6 that Esposito's toe began healing, there is no evidence that either Officer Mann or Nurse Towery were involved in receiving or treating Esposito's requests for medical care after December 1, 2019.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating each party's motion, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the

2

material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Esposito claims that Officer Mann's behavior in throwing away his medical request form and allegedly refusing to make a "sick call" upon request obstructed Esposito's efforts to obtain treatment for his toe and thus constituted deliberate indifference. Esposito also claims that Nurse Towery was deliberately indifferent by waiting 72 hours to respond to his first medical request for attention for his toe, prescribing the wrong medication for his infection, and failing to follow up to ensure that the medication was working. Neither claim has merit based on the undisputed evidence before me.

Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same protections against cruel and unusual punishment as prison inmates, "including the provision of adequate medical care." *Minix v. Canarecci*, 597 F.3d 824, 830–31 (7th Cir. 2010). But because pretrial detainees have not been convicted of a crime, the Eighth Amendment requirement of subjective awareness of the risk of serious harm is not an element of a Fourteenth Amendment claim by a pretrial detainee. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). In the medical context, the test is whether the defendant's deliberate failure to act was "objectively unreasonable." *Miranda v. County of Lake*, 900 F.3d 335, 354 (7th Cir. 2018).

As the court explained in *McCann v. Ogle County*, "the controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps." 909 F.3d 881, 886 (7th Cir. 2018). The first step focuses on the intentionality of the individual defendant's

3

conduct. It asks "whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case." *Id.* (quoting *Miranda*, 900 F.3d at 353). "A showing of negligence or even gross negligence will not suffice." *Id.* At the second step, the question is whether the challenged conduct was objectively reasonable. *Id.* "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

Here, the undisputed evidence shows that Officer Mann came on duty at RCJ on the morning of December 1, 2019. He was told by the third shift officer that Esposito had complained of a spider bite on his foot and had sent several medical requests over the previous days but had not yet been seen. When Esposito brought the issue up to him, Officer Mann informed him that HSU had been made aware of the situation but apparently had been unable to see him yet. In an effort to hurry the process along, Officer Mann instructed Esposito to fill out another medical request form so that if, when he called down to HSU, they asked for another form, he would be able to promptly provide it. However, when he called down, the medical staff informed Officer Mann that they were on their way up and a new form was not necessary. Since the medical staff responded without the need for a new form, Officer Mann asked whether he should still submit it. He was told he could throw it away, which he did.

To claim that Officer Mann's conduct violates Esposito's due process rights is absurd. Far from showing disregard to Esposito's request for medical care, Officer Mann took steps to expedite the process by personally calling down to medical and arming himself with a new request form in the event it was requested. To submit the form as or after Esposito was seen would only have

4

added confusion and potentially delayed staff responses to other requests for care. Esposito offers no evidence that Officer Mann was aware before he arrived for his morning shift on December 1, 2019, that Esposito needed medical care, and thus there is no evidence that Officer Mann did anything to delay the treatment Esposito requested. In fact, the evidence shows just the opposite. Officer Mann did what he could to expedite it. The claim against Officer Mann therefore fails.

The undisputed evidence likewise fails to support Esposito's claim against Nurse Towery. Again, the body-cam recording shows a nurse attempting to determine the nature and seriousness of Esposito's injury, calmly answering his questions and alleviating his concerns, and assuring him that the doctor would be advised of his injury and antibiotics likely prescribed. His allegation against her is that she prescribed the wrong medication and left him for an extended period of time without a follow-up. The fact that Bactrim did not solve the problem, however, was not her fault. As a registered nurse, she had no authority to prescribe medications; that was the job of the doctor. Nor does Esposito offer any evidence that Nurse Towery even knew that the medication was not working. It appears from the medical record that follow-up visits were by other nurses. Based on this record, Esposito's claim against Nurse Towery must also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment (Dkt. Nos. 43, 49) are **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of October, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge